UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE PRITCHETT,<br><br>           Petitioner,<br><br>   v.<br><br>STEPHANIE CLENDENIN,[1] Executive Director,<br><br>           Respondent. | No. 1:12-cv-1333-NONE-SKO (HC)<br><br>**FINDINGS AND RECOMMENDATION TO DENY PETITION**<br><br>**[THIRTY-DAY DEADLINE]** |

Petitioner is committed pursuant to the Sexual Violent Predator Act ("SVPA") and is proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He contends SVPA proceedings violated his due process rights because they were instituted in violation of his plea agreement. For reasons discussed below, the Court finds the claim to be without merit and recommends the petition be DENIED.

**I.      BACKGROUND**

On August 16, 2012, Petitioner filed a petition for writ of habeas corpus in this Court. (Doc. 1.) On December 4, 2012, the Court dismissed Grounds Two, Three, and Four from the petition. (Doc. 8.) Respondent was directed to file a response to Ground One on December 7,

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Stephanie Clendenin, the current Director of the California Department of State Hospitals, is hereby substituted as Respondent in this matter.

1

1  2012. (Doc. 9.) On April 18, 2013, Respondent filed an answer to the petition. (Doc. 18.) On
2  November 1, 2013, the District Court abstained from the exercise of jurisdiction pursuant to
3  Younger v. Harris, 401 U.S. 37, 40-45 (1971), and dismissed the petition without prejudice. (Doc.
4  22.) Judgment was entered the same date, and the case was closed. (Doc. 23.)
5      Following a court trial in Tulare County Superior Court, the court found that Petitioner
6  met the criteria for commitment under the SVPA, and in turn, committed him to the custody of
7  the California Department of State Hospitals ("DSH") for an indeterminate term. (Doc. 29-1 at 9.)
8  On July 23, 2020, the Fifth District Court of Appeal affirmed the commitment in a reasoned
9  decision. (Doc. 29-1.) On September 30, 2020, the California Supreme Court summarily denied
10 the petition for review. (Doc. 24 at 6.)
11     On October 15, 2020, Petitioner filed a motion to reopen the case. (Doc. 24.) Petitioner
12 represented that state proceedings had concluded and asked that the Court address the merits of
13 his remaining claim: that the SVP proceedings violated Petitioner's due process rights because
14 they were instituted in violation of his plea agreement in Tulare County Superior Court case no.
15 VCF233965. (Doc. 1 at 1, 5, 21-28.) Since state proceedings had now concluded, on February 2,
16 2021, the District Court reopened the case for consideration of the remaining claim. (Doc. 27.)
17 Although Respondent briefed the claim on the merits in its answer of April 18, 2013, in light of
18 the length of time that had passed since then and case developments including the decisions
19 rendered by the state courts on the issue, the Court directed the parties to provide supplemental
20 briefing on the claim. (Doc. 27.) On March 4, 2021, Respondent filed her supplemental brief.
21 (Doc. 28.) On March 29, 2021, Petitioner filed his supplemental brief. (Doc. 32.)

22 **II.    DISCUSSION**

23     A.    Jurisdiction

24     Relief by way of a petition for writ of habeas corpus extends to a person in custody
25 pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or
26 treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,
27 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as
28 guaranteed by the United States Constitution. Petitioner is now being held "pursuant to the

2

1    judgment of a State court," as required for habeas relief under 28 U.S.C. § 2254. The challenged
2    commitment arises out of the Tulare County Superior Court, which is located within the
3    jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).
4         On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of
5    1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its
6    enactment. Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases
7    filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA
8    and is therefore governed by its provisions.

9         B.    Legal Standard of Review

10   A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless
11   the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision
12   that was contrary to, or involved an unreasonable application of, clearly established Federal law,
13   as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was
14   based on an unreasonable determination of the facts in light of the evidence presented in the State
15   court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003);
16   Williams, 529 U.S. at 412-413.

17   A state court decision is "contrary to" clearly established federal law "if it applies a rule
18   that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set
19   of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a
20   different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-
21   406).

22   In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that
23   an "unreasonable application" of federal law is an objective test that turns on "whether it is
24   possible that fairminded jurists could disagree" that the state court decision meets the standards
25   set forth in the AEDPA. The Supreme Court has "said time and again that 'an unreasonable
26   application of federal law is different from an incorrect application of federal law.'" Cullen v.
27   Pinholster, 563 U.S. 170, 203 (2011). The petitioner "must show far more than that the state
28   court's decision was 'merely wrong' or 'even clear error.'" Shinn v. Kayer, ___ U.S. ___, ___ ,

141 S.Ct. 517, 523, 2020 WL 7327827, *3 (2020) (quoting Virginia v. LeBlanc, 582 U. S. ___, ___, 137 S.Ct. 1726, 1728 (2017) (*per curiam*)).  Rather, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law *beyond any possibility of fairminded disagreement*."  Richter, 562 U.S. at 103 (emphasis added); see also Kayer, 141 S.Ct. at 523, 2020 WL 7327827, *3.  Congress "meant" this standard to be "difficult to meet."  Richter, 562 U.S. at 102.

The second prong pertains to state court decisions based on factual findings.  Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)).  Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Wiggins v. Smith, 539 U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997).  A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists."  Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), *cert.denied*, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision.  See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions."  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

C.   Review of Petition

Petitioner contends that his commitment under the SVPA in Tulare County Superior Court

case no. VCF134527 violates his constitutional rights because it was instituted in violation of his plea agreement in Tulare County Superior Court case no. VCF233965.  Petitioner raised this claim in a habeas petition to the Tulare County Superior Court.  (LD[2] 4-13.)  The petition was denied in a reasoned decision. (LD 12.)  Petitioner then raised the claim to the Fifth District Court of Appeal and the California Supreme Court, but those petitions were also denied.  (LD 14-17.)

          1.     California's SVPA

California's SVPA allows the state to confine particularly dangerous individuals who have been convicted of multiple sexual offenses. Cal. Welf. & Inst. Code § 6600 et seq.  The SVPA defines a "sexually violent predator" (SVP) as "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior."  Id., § 6600(a)(1).  According to § 6600(b), a "sexually violent offense" includes a conviction for sodomy by force under Cal. Penal Code § 286, but it does not include a conviction for sexual battery under Cal. Penal Code § 243.4.

Individuals who are in custody under the jurisdiction of the California Department of Corrections and Rehabilitation ("CDCR"), who the Secretary of the CDCR determines may be a sexually violent predator, are screened and evaluated prior to their release pursuant to § 6601.  If initial screening reveals that the person is likely to be a sexually violent predator, the CDCR refers the person to the Department of State Hospitals ("DSH") for a full evaluation whether the person meets the criteria in § 6600.  Id., § 6601(b).  The DSH then conducts a full evaluation in accordance with standardized assessment protocol and by two practicing psychiatrists or psychologists.  Id., § 6600(c)-(d).  If the DSH determines that the person has a diagnosed mental disorder such that he is likely to engage in acts of sexual violence without appropriate treatment and custody, the DSH must forward to the designated county a request that a petition for commitment be filed.  Id., § 6601(h).  If the county's designated counsel concurs with the DSH, counsel must petition a court to commit the individual.  Id., § 6601(i).  The court or a jury must

---

[2] "LD" refers to the documents lodged by Respondent with her answer.

determine unanimously whether, beyond a reasonable doubt, the person is a sexually violent predator. Id., § 6604.  If the court or jury determines that the individual is a sexually violent predator, the person shall be committed for an indeterminate term to the DSH for treatment and confinement.  Id., § 6604.

### 2. State Procedural Background

On October 13, 2005, Petitioner was convicted in Tulare County Superior Court in case no. VCF134527 of two counts of sodomy while confined in a state prison or detention facility in violation of Cal. Penal Code §286(e). (LD 1.)  Petitioner was sentenced to three years in prison. (LD 1.)

Petitioner was released on parole after completing his prison sentence, but parole was revoked on April 5, 2010, on arrest of suspicion of rape. (LD 6 at 2; 14.)  He was returned to custody for 12 months. (LD 6 at 2; 14.)  Petitioner was then charged in case no. VCF233965 with rape in violation of Cal. Penal Code § 261 and assault with a deadly weapon in violation of Cal. Penal Code § 254.  (LD 4 at 2.)  On February 1, 2011, Petitioner entered a plea of no contest to the charge of sexual battery in violation of Cal. Penal Code 243.4(a) pursuant to a plea agreement. (LD 2.)  During plea negotiations, the district attorney correctly advised Petitioner that his plea to sexual battery in case no. VCF233965 would not make him eligible for commitment as a sexually violent predator.  (LD 6 at Ex. E; 14.)  However, the district attorney and defense counsel mistakenly believed that Petitioner's prior criminal history, including his 2005 conviction for sodomy, did not render him eligible for commitment as a sexually violent predator.  (LD 7 at Ex. A.)

On March 2, 2011, the day before Petitioner's parole release date for the prior sodomy conviction in case no. VCF134527, a forty-five day hold was placed on Petitioner so that he could be evaluated to determine whether he was eligible for commitment under the SVPA pursuant to Cal. Welf. & Inst. Code § 6601.3. (LD 9 at Ex. B.)  The hold was effective from 12:01 a.m. on March 3, 2011, through 12:00 midnight on April 17, 2011. (LD 9 at Ex. B.)

On March 3, 2011, Petitioner was sentenced in case no. VC233965 to two years in state prison pursuant to the plea agreement. (LD 2.)

6

1    On April 1, 2011, the Tulare County District Attorney filed an SVP petition based in part on the prior sodomy conviction in case no. VCF134527. (LD 3.)

On July 12, 2011, Petitioner filed a petition for writ of habeas corpus in the Tulare County Superior Court. (LD 4.) Petitioner claimed the SVP petition violated the terms of his plea agreement and requested dismissal of the SVP petition. (LD 4.) On February 21, 2012, the Tulare County Superior Court heard oral argument on the petition. (LD 11.) The court denied the petition for lack of authority to set aside the SVP petition and without prejudice to refiling a petition to set aside his plea in case no. VCF233967. (LD 11 at 7-8.)

### 3.    Legal Standard and Analysis

In Santobello v. New York, 404 U.S. 257, 262 (1971), the Supreme Court held that, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Plea agreements are contractual in nature and are to be construed under ordinary contractual interpretation of state law. Doe v. Harris, 640 F.3d 972, 975 (9th Cir.2011); Buckley v. Terhune, 441 F.3d 688, 695 (9th Cir.2006) (*en banc*). This rule has been regularly and consistently invoked and applied in the Ninth Circuit. See, e.g., United States v. Camper, 66 F.3d 229, 232 (9th Cir.1995); United States v. De La Fuente, 8 F.3d 1333, 1340 (9th Cir.1993); United States v. Arnett, 628 F.2d 1162, 1164 (9th Cir.1979).

Upon review of the record, it is clear that the state court rejection of the claim was not contrary to, or an unreasonable application of, the above legal standard, nor was it an unreasonable determination of the facts. As correctly noted by Respondent, SVP proceedings occurred independently of Petitioner's conviction in VCF233965. Petitioner was in lawful custody as a result of his parole revocation in case no. VCF134527 and the subsequent 45-day hold placed on him. The parole revocation, 45-day hold, and resulting SVP petition would have taken place with or without his plea and incarceration in the sexual battery case (case no. VCF233965). None of the documents used in the SVP petition relied on his conviction in the sexual battery case. Thus, even if Petitioner had refused the plea bargain in case no. VCF233965, and ultimately had been acquitted of all charges in that case, he still would have been in lawful

7

custody on April 1, 2011, when the SVP petition was filed, and commitment proceedings still would have occurred.

Moreover, there was no agreement between the prosecutor and the petitioner that an SVP petition would never be filed. The prosecutor agreed, correctly, that Petitioner's plea in the sexual battery case would not render him eligible for SVP commitment. While it is true that the prosecutor and defense counsel were mistaken in their belief that Petitioner's prior history would not render him eligible for SVP commitment, that belief had no bearing on the plea agreement in case no. VCF233965, nor could it, as the SVP proceedings occurred independently of the sexual battery case. There is nothing in the record showing that a promise not to institute SVP proceedings for actions outside of the sexual battery case was a bargain-for term in the plea agreement. Thus, the filing of the SVP petition could not constitute a violation of the plea agreement.

Petitioner claims that the prosecutor acted disingenuously and misrepresented the facts when Petitioner was sentenced according to the plea agreement on March 3, 2011, because the hold had been placed on Petitioner the day before. However, the DSH was conducting the evaluation process at that time, and pursuant to Cal. Welf. & Inst. Code § 6601, the county would not necessarily have been made aware until the evaluation process had been completed. This would have been on or after March 10, 2011, when the evaluation process had been completed by the DSH and a request forwarded to the county to file a petition. (LD 3 at Ex. A.) Moreover, Petitioner personally was placed on notice of the commencement of SVP proceedings on January 28, 2011, when Dr. Matoshich attempted to interview him after advising him that the purpose of the visit was to conduct a SVP evaluation. (LD 3 at Ex A.) Although this was well before the plea agreement took place, Petitioner never advised counsel or the prosecutor of this fact.

Finally, even if the state court had determined that Petitioner's plea was not knowing, intelligent and voluntary due to the subsequent SVP filing, the state court correctly determined that dismissal of the SVP petition was not a proper remedy. As noted by the state court in Petitioner's state habeas proceedings, "the most [the state court] could do would be to set aside [Petitioner's] sentence and plea and give him an opportunity to reinstate his not guilty plea and

8

proceed and risk an even longer sentence, if that's what he want[ed] to do." (LD 14.)  The state court petition was dismissed with leave to refile it based on only the issue of setting aside the plea in case no. VCF233965. (LD 14.)  The state court reasonably determined that this was Petitioner's only remedy.

Accordingly, Petitioner fails to demonstrate that the state court rejection of his claim was objectively unreasonable.  The petition should be denied.

## RECOMMENDATION

Based on the foregoing, the Court hereby RECOMMENDS that the petition be denied with prejudice on the merits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed within (10) court days (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **August 10, 2021**                    /s/ *Sheila K. Oberto*
                                                             UNITED STATES MAGISTRATE JUDGE